IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Raymond Warren,                                     Case No. 3:14CV306

        Plaintiff

        v.                                           **ORDER**

Ed Sheldon, Warden, et al.,

        Defendants

This is a state prisoner's failure-to-protect case under 42 U.S.C. § 1983.

The plaintiff, Raymond Warren, is an African-American Muslim who was an inmate at the Toledo Correctional Institution for seven months in 2012.

He alleges that the defendants – Warden Ed Sheldon, Deputy Warden Jodi Factor, and Chief Security Officer Gary Parker – knew that members of the Aryan Brotherhood, a white-supremacist prison gang, had labeled him a "snitch" and targeted him for future attacks. Nevertheless, Warren maintains, the officials failed to protect him from a brutal beating by Aryan Brotherhood members that left him unconscious.

Pending are Warren's motion for leave to file a third amended complaint (Doc. 57) and a motion for summary judgment by defendant Angelina Kallenberg, a correctional officer who was present during the attack. (Doc. 50).

Jurisdiction is proper under 28 U.S.C. § 1331.

For the following reasons, I deny the motion for leave to amend and grant the motion for summary judgment.

## Background

### A. The Proposed Amended Complaint

On June 26, 2012, an unidentified inmate hit Warren in the back of his head. (Doc. 57–1 at ¶12). Prison officials placed the assailant in segregation, but allowed Warren to remain in the general population. (*Id.* at ¶15). Because prison staff did not discipline Warren, "Aryan Brotherhood members . . . speculate[d] that Mr. Warren was a snitch." (*Id.*).

The next day, June 27, one Brotherhood member attacked Warren while others "raided his cell, stealing his belongings." (*Id.* at ¶16). Later that day, Warren started a fight with one of the Brotherhood members who had stolen his property. (*Id.* at ¶17). Prison authorities took Warren to segregation to await a disciplinary hearing before the Rules Infraction Board. (*Id.*).

While in segregation, Warren asked that prison staff place him in protective custody. Warren does not allege, however, that he gave any reason for his request. A correctional officer told Warren that the prison would begin an investigation into his request.

When Warren again asked for protective custody on July 3, an unidentified officer told him that, "due to a shortage of protective custody beds, [he] would have to return to general population[.]" (*Id.* at ¶19). Warren then "signed a form declining [protective custody]." (*Id.* at ¶20). Defendants Sheldon, Factor, and Parker allegedly "approved Mr. Warren's placement back into the cell block where his problems with the Aryan Brotherhood began." (*Id.* at ¶21).

On July 7, Warren was in the prison's recreation yard when he "was informed by an inmate that he would be attacked." (*Id.* at ¶22). Hoping to avoid the attack, Warren walked toward a

correctional officer, but "a group of Aryan Brotherhood members" surrounded him and began to beat him. (*Id.*).

Warren ran to his cell, but the Brotherhood members (as well as members of other prison gangs) followed him there. Two correctional officers separated Warren from one of his attackers, and, with the situation apparently under control, handcuffed Warren and one of the other inmates.

Other members of the Brotherhood, however, joined the fray, took advantage of Warren's handcuffed state, and "brutally beat him[.]" (*Id.* at ¶25). At least one officer – defendant Kallenberg – shielded Warren from his attackers and pepper-sprayed them, but the attackers continued to beat Warren. The attack left Warren unconscious, with two lacerations on his face and a handful of broken teeth. He continues to experience "severe headaches" and has undergone several dental procedures to repair, so far only partly successfully, his teeth. (*Id.* at ¶¶26–28).

## B. Earlier Proceedings

Warren brought this suit in February, 2014, against Sheldon, Factor, Parker, and Kallenberg. He alleged that the defendants violated his Eighth Amendment rights by not protecting him from a known and substantial risk of harm from the Aryan Brotherhood.

Sheldon, Factor, and Parker moved under Fed. R. Civ. P. 12(b)(6) to dismiss Warren's second amended complaint. (Doc. 18). They argued that Warren's allegations that they knew he faced a substantial risk of harm were purely conclusory. I agreed and granted the motion:

> Missing [from the complaint] is any information concerning exactly (or even approximately) when, how, and to whom Warren asked for protective custody placement, and what information he told the movants about the prior assaults. Even if one or more of them were aware of the first time he needed off-site medical attention (as one would expect some or all would be), mere awareness is not enough to meet the deliberate indifference standard.

*Warren v. Sheldon*, 2015 WL 2126916, *3 (N.D. Ohio).

The dismissal was without prejudice, however, to Warren's ability to take discovery "to determine what each of the movants knew about the activities of the Aryan Brotherhood, including, but not limited to, prior attacks, if any, on other inmates, and all other circumstances that may have put the movants on notice of the risk of further attacks on the plaintiff." *Id.*

The parties have undertaken that discovery, and on February 22, 2017, I heard oral argument on Warren's motion for leave to file an amended complaint.[1] The motions are now ripe for decision.

## Discussion

### A. Motion for Leave to Amend

Warren argues that his third amended complaint plausibly alleges that Sheldon, Factor, and Parker knew he was at risk of future injury from the Aryan Brotherhood, and that their failure to keep him in protective custody amounted to deliberate indifference to a serious risk of harm.

According to Warren, the defendants "knew he was having trouble with the Aryan Brotherhood" even before he requested protective custody. (Doc. 57 at 12). This is the case, Warren maintains, because: 1) a Brotherhood member had attacked him on June 27, 2012; 2) prison staff prepared a "conduct report" documenting the attack; and 3) Warden Sheldon receives and "signs off on all conduct reports." (*Id.* at 12 n.3).

He also argues that defendants knew he had requested protective custody before members of the Aryan Brotherhood attacked him, for a second time, on July 7.

---

[1] Natassia King and Jessica Daris, students at Northern Kentucky University's Salmon P. Chase College of Law, presented oral arguments on behalf of Mr. Warren. They appeared under the supervision of David J. Singleton. The court thanks Ms. King and Ms. Daris, as well as the other law students who appeared during earlier phases of the case, for their able representation of Mr. Warren.

Warren notes that prison officials placed him in segregation after he received a "ticket" for fighting with another inmate on June 27. While in segregation, Warren told a correctional officer that he wanted protective custody. In Warren's view, "it is reasonable to infer that the officer who interviewed [him] would have included [his] request for protective custody in the investigation report." (*Id.* at 13). And because it is the Deputy Warden's responsibility to review that report, the argument goes, defendant Factor learned that Warren wanted protective custody.

Finally, Warren contends that defendants were aware that TCI had become an especially dangerous prison in the two years preceding the June 27 and July 7 attacks. Warren points to records demonstrating that: 1) inmate-on-inmate assaults increased 112.9% between July, 2010 and July 2012; and 2) roughly 40% of the TCI population belonged to a "security threat group" – essentially, a prison gang. Warren also claims he was at special risk of harm from the Brotherhood, given his race and religion.

The defendants oppose the motion on two grounds.

First, they argue that the amendment is futile because Warren did not exhaust his administrative remedies *vis-a-vis* the prison's failure to place him in protective custody after the attack on June 27. Second, defendants maintain that Warren's proposed amended complaint is still conclusory on the knowledge prong.

### 1. Standard of Review

Civil Rule 15 states that a district court should give leave to amend freely and "when justice so requires." Fed. R. Civ. P. 15(a)(2).

In deciding whether to permit an amendment, the court considers "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

5

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] the futility of the amendment." *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003).

## 2. Exhaustion

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires that a state prisoner exhaust all available administrative remedies before filing a federal lawsuit challenging prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006).

The Ohio Department of Rehabilitation and Correction maintains a three-step process for inmate grievances.

At the first step, the inmate makes an informal complaint to prison staff. Ohio Admin. Code § 5120–9–31(k)(1). If that does not resolve the matter, the inmate may file a formal grievance with the prison's "inspector of institutional services." Ohio Admin. Code § 5120–9–31(k)(2). Finally, if the inmate's complaint remains unresolved, he may file an appeal to the ODRC's Chief Inspector. Ohio Admin. Code § 5120–9–31.

Defendants have submitted a declaration from Eugene Hunyadi, the ODRC's Assistant Chief Inspector, establishing that Warren did not file any grievance related to the decision by prison staff, in early July, 2012, not to keep Warren in protective custody, but to release him into the general population.

To be sure, Warren filed a grievance about the attack on July 7, and he pursued that grievance through the three-step process. (Docs. 67–1, 67–2, 67–4). But this grievance raised fundamentally different concerns than those underlying the pending lawsuit.

Warren's grievance focused on the attack of July 7, the condition it left him in, and how he wanted prison officials to respond. In this vein, he stated that:

- "I was assaulted by several inmate[s] while in handcuffs . . . and seriously injured";

- "I ask that my teeth be restored to the excellent condition they were in before I was attacked"; and

- "the inmates whom [sic] attacked me [should] be charged with assaulting me.

(Doc. 67–1).

Nowhere in the grievance did Warren allege that prison officials knew he faced a substantial risk of harm from the Aryan Brotherhood, and nowhere did he fault them for permitting him to re-enter the general population – that is, the very place where that risk was most likely to materialize.

Because Warren did not exhaust his administrative remedies *vis-a-vis* his deliberate-indifference claim, permitting him to file an amended complaint now would be futile. For this reason alone, I deny the motion for leave to amend.

### 3. Plausibility

In any event, Warren's proposed amended complaint fails to allege a plausible failure-to-protect claim.

"A failure to protect claim is governed by standards substantially similar to those applied to the claim for deliberate indifference to serious medical needs." *Bales v. Turner*, 2016 WL 1241947, *2 (N.D. Ohio).

"The objective component is satisfied by allegations that absent reasonable precautions, an inmate was exposed to a substantial risk of serious harm." *Id.* "To satisfy the subjective component, a plaintiff must allege that the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if reasonable measures were not taken, that the defendant actually drew the inference, and that the defendant acted in disregard of that risk." *Id.*

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Shadrick v. Hopkins Cnty., Ky.*, 805 F.3d 724, 737 (6th Cir. 2015) (internal quotation marks omitted).

Here, Warren has not plausibly alleged that the defendants knew he faced a substantial risk of harm in the form of further attacks by the Aryan Brotherhood.

The risk of harm that Warren faced had three elements:

1. The Aryan Brotherhood labeled Warren a "snitch" and targeted him for beatings on June 26, 2012, after prison officials did not discipline him for fighting with another inmate.

2. Brotherhood members attacked Warren and stole some of his property the next day, June 27.

3. Warren, apparently fearing attacks by the Brotherhood, asked prison officials to place in him in protective custody.

To make out a plausible claim, Warren must allege that defendants actually knew that he faced an imminent risk of harm. But there are no non-conclusory allegations in the proposed complaint that defendants knew about the "snitch" label, that the Brotherhood had targeted Warren for further attacks, or why Warren requested protective custody.

Indeed, Warren nowhere alleges that he told prison officials: 1) other prisoners had labeled him a snitch: 2) because of that snitch label, the Aryan Brotherhood targeted him for more beatings; and 3) he wanted protective custody to avoid those additional beatings.

Warren is thus left to speculate that, based on certain reports that defendants may have read, they would have known of the substantial risk of harm Warren faced.

But such speculation is just that. At best, these reports might have established that a prisoner affiliated with the Aryan Brotherhood attacked Warren on June 27. Without additional information,

8

however (information, moreover, that Warren himself knew and easily could have supplied), the defendants would have had no reason to know that Warren was at risk of future attacks, and why it was thus imperative to keep him in protective custody.

Furthermore, Warren's allegations concerning the overall violent climate at TCI – on which Warren heavily relies – do little to advance his claim.

The key issue, as outlined above, is whether the defendants knew that Warren himself, rather than all inmates in general, faced a pervasive risk of harm from the Aryan Brotherhood. But the allegations concerning inmate-on-inmate violence, increased gang activity within the prison, etc., do little to show that Warren, out of all the inmates at TCI, faced a specific risk of harm from a particular prison gang.

In granting the defendants' motion to dismiss, I explained that Warren's complaint lacked "any information concerning exactly (or even approximately) when, how, and to whom Warren asked for protective custody placement, and what information he told the movants about the prior assaults." *Warren*, *supra*, 2015 WL 2126916, *3.

Yet those are precisely the gaps that remains unfilled: there are no allegations that prison staff learned, whether from Warren himself or through their own investigations, that Warren was a Brotherhood target, that he thus faced a real risk of further beatings, and he therefore required protective custody.

Because the proposed amended complaint does not satisfy Rule 12(b)(6)'s plausibility standard, I will deny the motion for leave to amend.

9

### B. Kallenberg's Motion for Summary Judgment

Defendant Kallenberg is the correctional officer who tried to protect Warren and pepper-sprayed some of his assailants during the beating on July 7.

According to her declaration, Kallenberg was on duty on July 7 when she saw an inmate chasing Warren. (Doc. 50–1 at ¶3). Kallenberg, who did not know Warren and had no knowledge of his problems with the Aryan Brotherhood, ordered Warren and the other inmate to stop. (*Id.* at ¶¶4, 14). Both inmates complied; Kallenberg and a fellow correctional officer then handcuffed Warren and the other inmate. (*Id.* at ¶¶6–7).

Two other inmates approached Kallenberg and suddenly knocked Warren to the floor and started beating him. (*Id.* at ¶¶8–9). Kallenberg tried to shield Warren with her body and pepper-sprayed the aggressors, but those inmates fought through the pepper spray and continued to beat Warren. (*Id.* at ¶10).

Only when two more correctional officers intervened did the attack cease.

Kallenberg contends she is entitled to summary judgment because the undisputed evidence shows she actively tried to protect Warren from the other inmates, but they managed to overpower her. (Doc. 50 at 8–11). Warren offers no evidence to contradict Kallenberg's declaration, and in fact concedes that she is entitled to summary judgment. (Doc. 58). Accordingly, I will grant Kallenberg's uncontested motion.

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Plaintiff's motion for leave to file a third amended complaint (Doc. 57) be, and the same hereby is, denied; and

2. Defendant Kallenberg's motion for summary judgment (Doc. 50) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge
